## JOSEPH TAYLOR *v.* WILLIAM C. AMES.

The 16th section of the act for the relief of insolvent debtors, (Dig. 1844, p. 216,) requiring suits against a discharged debtor to be commenced by an original summons, did not apply to a judgment obtained against the debtor prior to his discharge,—but, upon this, execution could and must issue in common form, running against the body; the debtor being protected from arrest on such an execution, by showing his discharge to the officer serving the execution.

The proviso of section 21, ch. 200, of the Revised Statutes, in application to a judgment rendered before those statutes went into effect, does not forbid the execution issued thereon from conforming to the general rule, that the execution must pursue the judgment, and, if the judgment be general, run against the body of the debtor.

Under ch. 194, § 14, of the Revised Statutes, which directs all executions, issued by the supreme court or court of common pleas, to run against the goods and chattels and real estate of the debtor, and for want thereof, against his body, an alias execution should be issued in this form against a discharged insolvent, upon a general judgment rendered against him before those statutes went into operation, the execution being issued after; and by subjecting his real estate to levy thereon, no vested right of the debtor is disturbed, nor is this provision of the Revised Statutes, applicable to all executions issued after they went into operation, made to retroact.

ASSUMPSIT by the plaintiff, as sheriff of the county of Kent, to recover of the defendant the sum of $506, being the amount bid by the latter for certain real estate sold to him by auction, at a sheriff's sale, under executions issued by the court of common pleas for that county.

The declaration, which was special, in substance alleged, that at the February term of the court of common pleas for the county of Kent, 1851, two judgments were recovered against one Joseph W. Potter—one in favor of Alfred Reed and Elizabeth A. Wicks, and the other in favor of Alfred Reed—and that said judgments remaining wholly unsatisfied, on the 7th day of July, 1857, the judgment creditors sued out alias executions on the same and delivered them to the plaintiff for service, who, on

the 8th day of July, 1857, levied the same on certain real estate of the judgment debtor described in the declaration; that the plaintiff, after duly advertising said estate, sold the same at public auction to the defendant, the highest bidder therefor, for the sum of $506; but that the defendant, although a proper deed of the land purchased by him had been tendered, and payment of the price had been thereupon demanded, refused to pay his said bid.

To this declaration, the defendant filed three special pleas in bar:—

*First.* That the judgments, upon which the executions mentioned in the declaration issued, were rendered for debts contracted prior to 1851; and that after the rendition of said judgments, the said Joseph W. Potter filed his petition for the benefit of the insolvent act in the clerk's office of the supreme court for the county of Kent, which, at the September term of said court, 1852, was granted; whereby said Potter was, forever thereafter, exonerated and protected from arrest, imprisonment, and any manner of bodily restraint, on account of any debt contracted prior to the filing of his said petition; and that, at the time of the levy on said executions, said Potter was not absent from the state, or concealed therein.

*Second.* That the said Potter was discharged as an insolvent debtor, as in the first plea; and that the said executions ran against his body; and

*Third.* That said Potter was a discharged insolvent, as before pleaded, and that the plaintiffs in said executions did not, after the filing of said Potter's petition, nor after his discharge as an insolvent, sue out any original summons, or process of summons and attachment, against said Potter, nor was either of said judgments rendered upon any such process or summons.

To these pleas, the plaintiff demurred, generally.

*Currey,* for the plaintiff:—

1st. The general assembly has the constitutional power to extend and make more effectual the remedy upon past judgments and contracts, which still exist, as by subjecting to their enforcement or fulfilment the debtor's real estate, not before so subject; such extension of remedy not being construed to im-

Taylor *v.* Ames.

pair contracts, or to disturb vested rights. 1 Kent, Com. 455, 5th ed.

2d. By the true construction of Rev. Stats. ch. 200, §§ 20, 21, where judgment in chief has been rendered against an insolvent, prior to his discharge, an execution issuing on such judgment, after his discharge, must pursue the general form, or, in other words, pursue the judgment. *Edmondson* v. *Parker,* 3 B. & P. 185; *Buxton* v. *Mardin,* 1 T. R. 80; *Palmer* v. *Palmer,* 2 Conn. 462.

3d. The executions being authorized by the judgments, and the levy and sale thereon being regular, and not infringing the debtor's exoneration from arrest, the levy and sale were valid, notwithstanding the executions ran against the insolvent's body. *Woodcock* v. *Bennett,* 1 Cowen, 739; *Jackson* v. *Robbins,* 16 Johns. 575, 576; *Blanchard* v. *Goss,* 2 N. Hamp. 491; *Reynolds* v. *Corp,* 3 Caines, 267; *Miles* v. *Knott,* 12 Gill & Johns. 448, 452, 453; *Jackson* v. *Rosevelt,* 13 Johns. 97; *Jackson* v. *DeLancey,* Ib. 557; *Heister* v. *Fortner,* 2 Binn. 40; *Bennett* v. *Hamill,* 2 Scho. & Lef. 566; *Manning's case,* 8 Co. 191, 192; *Drury's case,* Ib. 284.

*Blake,* for the defendant:—

1st. The executions upon which this sale was made are void, because issued upon judgments obtained against the insolvent before his discharge, instead of upon new judgments, to be afterwards obtained. Digest, 1844, p. 216, § 16. They are void, because they run against the body of a discharged insolvent, contrary to the express provision of said 16th section; and because they run against real estate, contrary to the same provision. For the same reasons, they are void, under Rev. Stats. ch. 200, fairly construing that act, so as not to make it retrospect.

2d. If the new insolvent act (Rev. Stats. ch. 200,) authorizes an execution to issue against the real estate of an insolvent, discharged under the act of 1844, for a debt existing at the time of his petition, it is unconstitutional, since it destroys a right vested under a contract. *Fletcher* v. *Peck,* 6 Cranch, 87.

3d. The objection to these executions is not taken, as contended, in a *collateral* proceeding, but, if it be, it is properly

taken, since the executions and levies are not merely *voidable*, but *void.* It is taken, not against the title of an innocent purchaser, as in the case cited by the plaintiff, but by a purchaser, as a reason why he should not be compelled to take a title against which the objection lies. *Maberly* v. *Robbins,* 5 Taunt. 626; *Elliot* v. *Edwards,* 3 B. &·P. 181; *Williams* v. *Amory,* 14 Mass. 20; *Winslow* v. *Hathaway,* 1 Pick. 210; *Chamberlain* v. *Doty,* 18 Ib. 495; *Picket* v. *Breckenridge,* 22 Ib. 297; *Penniman* v. *Cole,* 8 Met. 496; *Bradley* v. *Bassett,* 2 Cush. 417; *Kennedy* v. *Duncklee,* 1 Gray, 65; *Palmer* v. *Palmer,* 2 Conn. 462; *Williams* v. *Cable,* 7 Ib. 119; *Mitchell* v. *Kirtland,* Ib. 229; *Reed* v. *Markle,* 3 Johns. 516; *Jackson* v. *Morse,* 18 Ib. 441; *Woodcock* v. *Bennett,* 1 Cow. 711; *Ward* v. *Colvin,* 2 Hill, 566; *Olcott* v. *Robinson,* 20 Barb. Sup. Ct. R. 148; *Den* v. *Wright,* 1 Pet. C. C. R. 66; *Bond* v. *Wilder,* 16 Vt. 393; *Wilson* v. *Fleming,* Ib. 469; *Gray* v. *Parker,* Ib. 652; *Morton* v. *Edwin,* 19 Ib. 80; *Jones* v. *Spear,*· 21 Ib. 426; 4 Zab. 797; *Dobson*· v. *Murphy,* 1 Dev. & Bat. 586 ; *Blanchard* v. *Blanchard,* 3 Ired. 105; 8 Rich. 345; *Pomeroy* v. *Crocker,* 4 Wisc. 174.

BRAYTON, J. The point raised upon the demurrer to the defendant's third plea in bar, is, that the process, upon which the levy was made, was void; and that no execution could issue upon any judgment rendered against the debtor prior to the filing of his petition for the benefit of the insolvent act. The argument of the defendant is, that by the provisions of the 16th section of the said act, (Digest of 1844, p. 216,) no execution could issue on any such judgment; but the. judgment creditor must sue the judgment, by writ of summons, and obtain a new judgment, and sue out execution against goods and chattels only.

This section provides, that the debtor who shall obtain his certificate of discharge under the act, " shall forever thereafter be exonerated and protected from arrest, imprisonment, or any manner of bodily restraint, on account of any debt, &c., (with certain exceptions,) entered into, or incurred, prior to the filing of his petition; and then provides, " that any creditor of said insolvent may sue out an original summons against him, and upon final judgment rendered thereon, in favor of such creditor,

Taylor *v.* Ames.

execution shall issue, and be levied and served as in ordinary cases; provided, that such execution shall not run against the body of said insolvent, nor shall his real estate be attached thereon, unless he be, at the time of the attachment, absent from the state, or concealed therein."

The declared effect of the certificate of discharge, regularly obtained, is, to protect the body from arrest or imprisonment, or any bodily restraint. It is not declared, that such certificate shall vacate any judgment or execution which any creditor may have at the time, nor is it, at all, the necessary result of what is declared, namely, the protection of the body. But since the body is protected, and no writ of arrest could be served upon the debtor, the act provides, that the mesne process, to obtain judgment, shall be by original summons only; and in such case provides, that the execution shall be special, and shall not run against the body; and after having declared, that the execution shall be levied and served as in ordinary cases, it became necessary to insert the further proviso, that it should not run against the body, because, in ordinary cases, it would so run. The statute is answered by applying these provisions to cases of suits for the collection of debts, not already reduced to judgment; and it would be a strained construction to hold, that the legislature intended to require a new suit to obtain that which the creditor already had. If it had been intended that judgment should be vacated, or execution perpetually stayed, language appropriate to such purposes would have been used. The certificate of discharge was a full protection from arrest. It was only necessary for the debtor to produce that certificate to the officer charged with process, to stay any proceeding against his person. We see nothing in the provisions of this section of the act, and there is nothing in any other part of it bearing upon this point, why execution should not issue upon the judgment, without summoning the defendant to answer further. The execution is not therefore void, and the demurrer to this plea must be sustained, and the plea overruled.

The *second* plea alleges, that the execution is issued against the body of the debtor; and the argument of the defendant is, that inasmuch as, by the act, the debtor's body is protected from

31 *

arrest, any execution running against his body is void. That an execution may issue upon a judgment rendered prior to the debtor's discharge, is, as already stated, established; and the question remaining under this plea is, whether, if any execution issue upon such a judgment, it should be one to run against the debtor's estate only.

If execution can, by law, be issued at all upon a judgment rendered prior to the discharge of the debtor under the act, then, clearly, it must be such an one, and such only, as conforms to the judgment rendered. If it be a general judgment, the execution must also be general; and any other would be erroneous. The case of *Pennoir* v. *Brace*, 1 Salk. 319, is a leading case on this point. There was judgment against four, and a writ of error brought thereon, which abated by the death of one of the defendants. Execution then issued against the four; and the court held, that it might well be, as such execution was warranted by the judgment; and an execution against three only would be erroneous, unless the fact of the death appeared of record; and even then, it might, unless some new person, not named in the execution, would be affected by it. If it would affect a third person, there must be a *sci. fa.* to obtain one against him. In *Buxton* v. *Mardin*, 1 T. R. 80, the same principle was recognized. That case arose under the act, 12 Geo. 3, ch. 23, in relation to bankrupts, which declared, that the property should not be protected; and the act provided, that in case of judgment rendered prior to the discharge, the plaintiff might sue out an execution against goods and chattels, and not to run against the body; and might prosecute any action to judgment, and have such execution. Judgment on the case was rendered, after the discharge, upon warrant, and passed generally; but the execution was special. *Buller* held, that this was a special execution, on a general judgment, which could not be; that if judgment be general, before discharge, no special execution could be had without a *scire facias*. The execution and judgment were set aside, however, because judgment was given after the discharge, and without any opportunity for the debtor to plead; but the general rule was fully recognized, that the execution must pursue the judgment. The case of *Edmon-*

*son* v. *Parker*, 3 B. & P. 185, recognizes the same rule; and so does *Palmer* v. *Palmer*, 2 Conn. 462. In this last case, execution ran against Palmer, the defendant, personally, when the judgment was rendered against him as administrator. *Gould*, J., said, that the judgment must pursue the declaration, and the execution must pursue the judgment; and though the plaintiff may sue the judgment in his individual capacity, yet he must count upon the judgment as it is, and so must the execution go.

It would seem naturally to follow, as the converse of this rule, that if the execution, in any case, does pursue the judgment, it cannot be erroneous, much less irregular; and the cases fully recognize this rule also. *Pennoir* v. *Brace*, 1 Salk. 319; *Palmer* v. *Palmer*, 2 Conn. 462; *Baxter* v. *Mardin*, 1 T. R. 80; *Edmonson* v. *Parker*, 3 B. & P. 185.

In the case before us, there was a general judgment, which did not warrant a special execution; and by the general law, the execution upon such a judgment, as the law stood before the Revised Statutes, would regularly issue against the goods and chattels of the defendant, and for want thereof, against his body. It could not run against goods and chattels only; that would be erroneous; neither could it issue against the defendant's real estate, except as in all other cases, where the defendant was out of the state, or concealed therein; in which case, the words "real estate" might be inserted therein. The Revised Statutes went into effect prior to the issue of the executions, upon which the levies in this case were made. By these statutes, the form of execution upon a general judgment is prescribed; and it is required to run against the real estate, as well as against the goods and chattels, and body, of a defendant. In effect, the statute declares, and without regard to the presence or absence of the debtor from the state, that such a judgment warrants such execution; and that the execution against the goods, chattels, real estate, and body of the defendant, does pursue the judgment, and is not erroneous. Clearly, then, the executions in this case could not be held void, in any sense, so as to defeat a levy regularly made thereon. The defendant's second plea must therefore be overruled, and the demurrer thereto sustained.

Taylor *v.* Ames.

The *first* plea alleges, that the debtor was, at the time of the levy, openly within the state, and not absent therefrom, or concealed therein. This would seem to fall within the principle before stated in considering the demurrer to the second plea, that the execution to issue must conform to the judgment; and to do so, as provided by the Revised Statutes, it may issue directly against the debtor's real estate; and if it be made to run against real estate, it is quite immaterial, whether the debtor be, or be not, within the state. The argument, however, of the defendant, is, that by the act existing at the time of the discharge, and as its provisions then were, the real estate of the debtor was exempt from attachment, unless he were absent; that this exemption was secured to him by the act, to the same extent as the exemption of his body from arrest; that the subsequent act, providing for the issue of execution, does not act retrospectively, and ought not to be so construed, especially where its effect is to defeat a vested right.

This reasoning is not convincing. There is nothing in the act which creates any vested right in the debtor, to any such exemption as is here claimed for him. All that is granted him in perpetuity, is, his exemption from arrest. The act does not profess to grant more. There is nothing in it from which to imply any exemption of property. The proviso in the 16th section, which applies to judgments thereafter to be obtained against the debtor, and to the executions thereon, and declares, that his real estate shall not be attached when he is absent, does not evince any intent to exempt it from attachment, but rather, that it shall be subject to attachment. It indicates the design of the legislature, that no distinction should be made in this respect between insolvent and other debtors; and as no other person's real estate could be attached while he was present, so that of the discharged debtor should not be; and all proceedings against property, real and personal, are left to be regulated by statute.

There is no reason why the provisions of law in the Revised Statutes, prescribing in what form execution shall issue, should not be applied to the executions upon these judgments. This act does not speak of judgments, but of executions only. It

Taylor *v.* Ames.

does not speak of them as of executions to be issued, or judgments to be rendered. It applies to executions generally; and without giving any retrospective operation to the act, will, naturally, apply to all executions issuing after the time when the act went into effect. No distinction being made by the statute in this respect, we can make none; and the demurrer, therefore, to this plea, as to the others, must be sustained, and the plea overruled.